STEPHEN TUNSTALL, Respondent, *v.* WALTER W. WINTON, Appellant.

*Order of arrest — when a husband who has deserted his wife may be arrested in an action brought by one who has supported her — Code of Civil Procedure, sec. 550, sub. 2.*

Where a husband has without cause or provocation abandoned his wife and fraudulently disposed of his property in such a manner as that it cannot be appropriated to her support or to the payment of the debts she might contract on his credit for that purpose, he may be arrested under subdivision 2 of section 550 of the Code of Civil Procedure, in an action brought against him by one who has expended moneys in supporting and maintaining the wife while so abandoned. (Davis, P. J., dissenting.)

Appeal from an order made at a Special Term, denying a motion to vacate an order of arrest.

*B. F. Sawyer*, for the appellant.

*E. P. Wilder*, for the respondent.

Brady, J.:

The motion to discharge the order of arrest was made on the plaintiff's papers. The action was brought by the plaintiff to recover for moneys expended for the support and maintenance of the wife of the defendant for a series of years, during which time she had been abandoned without any provision having been made for her by her husband.

The facts are that the defendant was married to the plaintiff's daughter in November, 1866, and lived with her at Scranton, Pennsylvania, until September, 1874, when he suddenly and without any notification of his intention to do so, and without cause or provocation, and when his wife was sick and in need of medical attention, fled from Scranton in company with a woman of that place, alleged to be of unchaste repute. After diligent and persevering search on the part of his wife, assisted by the police and by an advertisement, the defendant was traced to Detroit, Michigan, where, upon discovering that his wife had traced him to that place and was pursuing him, he fled to Elyria, Ohio, thence to Canada and

finally to this city, where he was discovered in July, 1881, doing business under the name of William Winthrop. He continued to reside with the woman in whose company he left Scranton, and in the meantime obtained from some court in Wisconsin a divorce from his wife, on the ground that she had deserted him. The complaint herein alleges that the decree of divorce was obtained fraudulently by false allegations and subornation of perjury, and that no process was served upon his wife, and that no court had jurisdiction to grant the divorce. The defendant having moved upon the plaintiff's papers must be regarded as admitting the truth of all these allegations against him. His sudden departure from Scranton, Pennsylvania, was made with the intention to avoid the payment of any sums necessary for the support of his wife. In other words, to avoid the obligation of supporting her, which he was bound to do by contract of marriage. The letters which were produced in the case show the disposition of some property which he had, as a part of his design in fleeing from Scranton, Pennsylvania. By thus leaving his wife he authorized any person dealing in necessaries, or willing to do so, to supply a proper amount thereof for his wife, for which he would be liable upon an implied promise to pay, arising out of his obligation as a husband. As observed in 1 Parsons on Contracts, 150, "The courts now show a tendency to rest the responsibility of the husband for necessaries supplied to the wife on the duty which grows out of the marriage relation, and therefore not upon any supposed agency. These necessaries would be commensurate with the husband's duty of maintaining her and supplying all her wants according to his ability." The Code, by section 550, provides that the defendant may be arrested in an action upon a contract, express or implied, where he has, since the making of the contract, or in contemplation of making the same, removed or disposed of his property with the intent to defraud his creditors. The defendant in contemplation of the implied contract which he made, by his departure, with any person who might supply the necessaries of life to his wife, and to avoid the effect of such contract, took away with him property evidently with the intention, as already suggested, of removing or disposing of it in such a way that it could not be reached by process of law. In the letter written by the woman with whom he left Scranton,

and dated the 26th of April, 1876, she said: "Walter's property is fixed so they cannot get anything, unless they get Walter's father to pay them so much for a divorce."

This is *prima facie* sufficient, and the appropriation of property made by him, taken in connection with his flight, to show a fixed determination on the part of the defendant so to arrange his affairs and dispose of his property in contemplation of his liability as a husband, as to defraud his creditors who might supply his wife with necessaries, and would seem to be sufficient therefore under the section of the Code in contemplation. There is, however, another feature in this case, namely, the fraud perpetrated by the defendant in reference to his implied contract. "The test of the liability to arrest in such an action," said ANDREWS, J., in *Hathaway* v. *Johnson* (55 N. Y., 95), "is the guilt of the defendant in contracting the debt or incurring the obligation sued upon. There must have been a fraudulent purpose in contracting the debt or incurring the liability on the part of the defendant." And these observations would seem to apply as well to the removal of the property as to fraud in incurring the obligation. The defendant, by secretly leaving Scranton, without cause or provocation, with the intention of separating from his wife, and with the further intention of making no provision for her support, and abandoning her, and thus making it necessary for some person to supply her wants, incurred the obligations which the furnishing or selling such supplies would create. This was a fraudulent scheme, involving a preconceived design of incurring an obligation which he did not mean to discharge. I am aware that this may be regarded as extending the doctrine of frauds beyond its ordinary limits. But the implied contract to pay at once, created by the defendant's abandonment, was conceived in fraud, and carried out in the same spirit, as indicated by the sudden and secret flight, and by appropriation of property, and by "fixing matters," to use the language of the letter to which reference has been made, in such a way as to prevent success in the effort to collect the amount which might become due from him for necessaries furnished his wife. The contract to pay for them is implied; the intention to avoid the payment is clear, and the preconceived design palpable. The conduct of the defendant presents, in support of this view — sudden and clan-

destine flight, adultery — the intention to obtain a divorce by improper and fraudulent means, abandonment of his wife, and consequent design and intention to avoid the payment of the debts for her maintenance, which he impliedly contracted by such flight and abandonment. He is liable therefore to arrest in both aspects of the case, and should be held in order to prevent another sudden departure to avoid the payment of his debts.

. The order of arrest should be affirmed, with ten dollars costs and the disbursements of the appeal.

DANIELS, J.:

From the manner in which the defendant abandoned his wife he must have been aware of the fact that her necessities could only be provided for by contracting debts on his own or her credit. The law empowered her to create debts for such purposes against him, and that she appears to have done. These debts in legal contemplation were his debts, and there is evidence in the case that he disposed of, or in the language of the letter of his paramour he had fixed, his property so that it could not be appropriated to the payment of such debts. This was a fraud upon the persons who, upon his credit, might trust his wife for such necessaries as were required for her support; and that brought the case within subdivision 2 of section 550 of the Code of Civil Procedure, for it established the fact that he had disposed of his property with intent to defraud his creditors. I agree, therefore, to the conclusion of Mr. Justice BRADY that the order denying the motion to vacate the order of arrest should be affirmed.

DAVIS, P. J. (dissenting):

It has often been said that "hard cases make bad law." The humane impulses of judges are apt in such cases to take the place of the settled rules and principles of law which by their application to the particular case seem to work a wrong. It may well be that to cases like the present the legislature can with propriety extend the right to arrest and imprison a debtor, but it has not done so. It has declared by statute what exceptions shall exist to the general enactment that imprisonment for debt shall not exist; and this case is not within any of those exceptions.

The right of the plaintiff under the facts of this case to furnish necessaries to the defendant's deserted wife is not disputed; nor is it important to consider whether it rests upon an implied agency in the wife to contract the debt, or springs out of the duty of the husband to provide for the wife. In either view it stands upon a substantial and well recognized basis. But the right itself grows out of a condition of things known to the creditor, and the existence of which before and at the time of the giving of the credit must be affirmatively established by him. In acting upon such facts he acts, of course, with knowledge in furnishing the necessaries which the law permits, and he is not deceived nor defrauded in respect to the facts. He is assumed to have elected upon such knowledge to give the credit and to take the responsibility of establishing the facts against the husband as a condition of enforcing his liability. The wife is wronged, and because of her wrongs a third person may interfere to help her upon the husband's credit. But the husband has not wronged or defrauded him. He has not obtained his property by false pretenses or representations, nor by any disposition of property fraudulent as to him. I am not able to see any substantial ground on which the wrong to the wife can be imported into the transaction between her and the party who voluntarily gives her the means of subsistence on the husband's credit, so as to enable him to arrest the husband for the debt, under the provisions of existing laws.

I think the order of the court below should be reversed, but without costs.

Order affirmed.